# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADAM KELLEY, | ) |
|           Plaintiff, | ) No. 13 CV 4922 |
| v. | ) Magistrate Judge Young B. Kim |
| SPIRO LEMPESIS, individually and as an agent of COMMUNITY CONSOLIDATED SCHOOL DISTRICT 180, BURR RIDGE MIDDLE SCHOOL, | ) |
|           Defendants. | ) August 7, 2015 |

## MEMORANDUM OPINION and ORDER

Plaintiff Adam Kelley filed this lawsuit alleging that Defendant Spiro Lempesis, a former teacher and softball coach, sexually assaulted Kelley when he was a minor, and that Defendant Community Consolidated School District 180, Burr Ridge Middle School ("District 180") was institutionally negligent in preventing the unlawful conduct. During written discovery, District 180 withheld five responsive documents ("the disputed documents") on the grounds that they are protected from disclosure under the attorney-client privilege and also under the work-product doctrine. The disputed documents relate to a reprimand letter that District 180 issued to Lempesis sometime after May 22, 1996 ("the Letter"). The Letter, which addresses Lempesis's allegedly inappropriate conduct involving another minor, is missing from District 180's personnel records for Lempesis. Kelley therefore moves to compel District 180 to produce existing draft versions of

the Letter. For the following reasons, Kelley's renewed motion to compel is granted in part and denied in part:

**Background**

Kelley alleges that Lempesis sexually abused him from 1995 to 1999. (R. 125, Pl.'s Reply at 2.)[1] Lempesis was a teacher and softball coach at District 180 from 1992 to 1996. (R. 36, Ans. ¶ 2.) During written discovery, Kelley requested a copy of Lempesis's personnel file, as well as documents pertaining to investigations, complaints, or allegations regarding "claimed inappropriate sexual contact or abuse" or "inappropriate[]" actions by Lempesis. (R. 82, Pl.'s Mot. at 1-2.) District 180 complied and produced a copy of Lempesis's personnel file. (R. 107, Pl.'s Renewed Mot. at 2.)

However, during Lempesis's deposition on February 10, 2015, Kelley discovered that District 180 failed to produce a document that had been placed in Lempesis's personnel file. (Id. at 1-3.) The missing document was the Letter, which served as a written reprimand from Terry Tamblyn, former District 180 superintendent, (R. 113-2, Def.'s Resp., Tamblyn Dep. 6:10-14, May 27, 2015), to Lempesis regarding alleged inappropriate behavior involving another student, (R. 125, Pl.'s Reply at 1-2). Kelley moved to compel District 180 to produce the Letter. (R. 82, Pl.'s Mot.; R. 107, Pl.'s Renewed Mot.) District 180 responded that it

---

[1] The court ordered Kelley to file a reply in support of his renewed motion to compel by June 26, 2015. (R. 120, June 19, 2015 Ord.) Kelley did not file his reply until June 29, 2015, and did so without seeking leave from the court to file his reply late. (See R. 125, Pl.'s Reply.) The court considered Kelley's reply in this instance, but any future submissions that Kelley files late without leave of court will be stricken without notice.

2

was not in possession of the Letter but produced a privilege log listing five documents relating to the Letter. (R. 113-1, Def.'s Resp., Priv. Log; R. 113-3, Def.'s Resp., Schneider Aff. ¶ 3.) Those five documents are the subject of the present motion.

The disputed documents consist of two different versions of the Letter, facsimile cover sheets sent between Tamblyn and Philip Gerner (District 180's outside counsel), and a facsimile transmission report. (R. 113-1, Def.'s Resp., Priv. Log, Docs. 1-5.) District 180 asserts that these documents are protected from disclosure by the attorney-client privilege, (R. 113-1, Priv. Log, Docs. 1-5), and the work-product doctrine, (id., Docs. 2, 3). Kelley disputes whether these documents are protected, (R. 92, Pl.'s Mot. at 4-6), and argues that even if they otherwise would be protected, this court should overlook the attorney-client privilege and work-product doctrine based upon undue hardship, (R. 107, Pl.'s Renewed Mot. at 3). After the motion was fully briefed, District 180 complied with this court's order requiring it to submit the disputed documents for an *in camera* review. (R. 131, July 10, 2015 Ord.)

## Analysis

District 180 argues that Kelley is not entitled to discover the disputed documents because they are attorney-client communications and/or work product. Pursuant to Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Because federal jurisdiction in this action is based upon diversity of citizenship, and Illinois supplies

3

the rules of decision, Illinois law governs whether the attorney-client privilege applies. *See* Fed. R. Evid. 501; *Reid v. Neighborhood Assistance Corp. of Am.*, No. 11 CV 8683, 2012 WL 5995752, at *3 (N.D. Ill. Nov. 30, 2012). Under Illinois law, "where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal advis[o]r," unless the protection is waived. *Fischel & Kahn, Ltd. v. van Straaten Gallery*, 727 N.E.2d 240, 243 (Ill. 2000). The privilege serves to "encourage and promote full and frank consultation between a client and a legal advisor by removing the fear of compelled disclosure of information." *Id.* Despite the protections afforded by the privilege, "Illinois adheres 'to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit.'" *See Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 32 (Ill. 2012) (citation omitted). Thus, courts should "strictly confine[] [the privilege] within its narrowest possible limits." *Id.* (citing *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991)).

Although Illinois law applies to the attorney-client privilege issues in this case, federal courts sitting in diversity apply federal law to work-product questions. *See Slaven v. Great Am. Ins. Co.*, No. 13 CV 1370, 2015 WL 1247431, at *3 (N.D. Ill. March 18, 2015). Indeed, "'[t]he work-product doctrine is a procedural rule of federal law; thus, [Fed. R. Civ. P.] 26 governs [in] diversity case[s].'" *Id.* (quoting *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009)). Under federal law, the

4

work-product doctrine protects "documents prepared by attorneys in anticipation of litigation for the purpose of analyzing or preparing a client's case." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citing Fed. R. Civ. P. 26(b)(3)). Importantly, the work-product doctrine is limited to situations involving "some articulable claim" that is "likely to lead to litigation." *Id.* at 622. Similar to Illinois's attorney-client privilege, the federal work-product doctrine must be narrowly construed because it "makes the search for truth more difficult by preventing disclosure of what is often exceedingly relevant and probative information." *Slaven*, 2015 WL 1247431, at *4 (citing *Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 144-45 (2003)).

In his earlier motion to compel, which the court denied without prejudice, Kelley argued that District 180 could not satisfy the requirements for invoking the attorney-client privilege or the work-product doctrine for any of the disputed documents. (See R. 92, Pl.'s Mot. at 3-6.) To determine the existence of the attorney-client privilege, the court must examine the following factors:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*People v. Adam*, 280 N.E.2d 205, 207 (Ill. 1972) (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton Rev. 1961)). To assess whether the work-product doctrine applies, the court must look to whether the work at issue constitutes information created "in anticipation of litigation for

5

the purpose of analyzing or preparing a client's case." *Sandra T.E.*, 600 F.3d at 618. Even if the work product qualifies for protection, the materials may be subject to disclosure if they are "otherwise discoverable under Rule 26(b)(1)" and the party seeking disclosure "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). In order to assess Kelley's arguments, the court reviewed the disputed documents *in camera*. *See, e.g., In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (finding with respect to the federal privilege that "[t]he inquiry into whether documents are subject to a privilege is a highly fact-specific one"). That review yielded the following findings:

**A.     Documents Nos. 2-4**

Document Nos. 2 through 4 on District 180's privilege log are two different unsigned and undated versions of the Letter. (R. 113-1, Def.'s Resp., Priv. Log, Docs. 2-4.) These documents consist of:

- A typed version of the Letter with markings "Confidential Draft" and "Privileged and Confidential," which Tamblyn drafted and which contains Gerner's handwritten comments, (id., Doc. 2);

- A typed version of the Letter with markings "Confidential Draft," "Privileged and Confidential," and "File Copy," which incorporates Gerner's comments, (id., Doc. 3); and

- A facsimile cover sheet from Gerner to Tamblyn ("Document No. 4-A"), attaching the Letter ("Document No. 4-B"), (id., Doc. 4).

(R. 113, Def.'s Resp. at 1-2.) When questioned about the versions of the Letter listed on District 180's privilege log, Tamblyn testified at his deposition that his "standard operating procedure" would have been to draft a letter and then to send it to Gerner

6

for legal comments. (R. 113-2, Def.'s Resp., Tamblyn Dep. 4:5-23, May 27, 2015.) Tamblyn further explained during his deposition that:

> [W]hat this [Privilege Log] indicates to me is that I did draft a letter to Mr. Lempesis, I sent it to [Gerner] for his suggestions, he sent it back to me, at which time I created the final document that was given to Mr. Lempesis and put in his file and also mailed to him.

(Id. at 5:7-11.) As explained below, Document No. 2 qualifies for protection under the attorney-client privilege, but Document Nos. 3 and 4-B, which are identical, do not enjoy the same protection. Neither does the work-product doctrine extend to these documents.

As to Document No. 2, District 180 properly withheld that document on the ground that it is protected by the attorney-client privilege. Illinois's attorney-client privilege shields communications between a client and an attorney when the client requests legal advice. *See Ctr. Partners*, 2012 IL 113107, ¶ 30. The facsimile cover sheet that accompanied Document No. 2 included a request by Tamblyn for legal advice from Gerner in his capacity as an attorney. (See R. 113-1, Def.'s Resp., Priv. Log, Docs. 1-2.) The typed portion of Document No. 2 drafted by Tamblyn was expressly designated as a "Confidential Draft." (Id., Doc. 2.) Gerner in turn designated his marked-up version of the draft Letter as both "Privileged and Confidential." (Id.) And there is no evidence of waiver. Accordingly, Tamblyn's confidential statements sent to Gerner for the purpose of seeking legal advice and Gerner's confidential handwritten comments made in response qualify for protection under the attorney-client privilege. *See Adam*, 280 N.E.2d at 207. Indeed, the very purpose of the privilege—"to encourage and promote full and frank

consultation between a client and legal advisor [without] the fear of compelled disclosure," *Ctr. Partners*, 2012 IL 113107, ¶ 31—would be flouted if the court compelled the disclosure of Tamblyn's request for legal advice and Gerber's response.[2]

Kelley argues that even if the attorney-client privilege applies, Document No. 2 and the other withheld documents should be subject to disclosure because they relate directly to relevant evidence that District 180 cannot otherwise locate. (R. 107, Pl.'s Renewed Mot. 1-3.) Yet Kelley has not pointed to any authority suggesting that there is a "substantial need" or "undue hardship" exception to the attorney-client privilege. *See Vodak v. City of Chi.*, No. 03 CV 2463, 2004 WL 783051, at *4 (N.D. Ill. Jan. 16, 2004) (in interpreting federal law, rejecting defendants' argument that "substantial need" or "undue hardship" vitiates the attorney-client privilege since Rule 26 exceptions based upon need or hardship apply only to the work-product immunity); *Scurto v. Commonwealth Edison Co.*, No. 97 CV 7508, 1999 WL 35311, at *4 (N.D. Ill. Jan. 11, 1999) (in applying federal law, observing that "'substantial need' and 'undue hardship' exceptions . . . apply to

---

[2] *See Lee v. Chi. Youth Ctrs.*, No. 12 CV 9245, Dkt. No. 103, at 2 (N.D. Ill. Aug. 6, 2014) (finding under the federal privilege that where a party made a request for legal advice regarding an attached draft plan, and an attorney responded with revisions to the draft plan, the response was protected by the attorney-client privilege); *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) (finding under the federal privilege that "[c]ounsel's comments on, and revisions to, drafts of documents that [we]re intended for ultimate disclosure to third parties can be privileged to the extent that the comments and revisions communicate legal advice and have been maintained as confidential"); *McCook Metals L.L.C.*, 192 F.R.D. 242, 255 (N.D. Ill. 2000) (applying federal privilege law in finding that draft contracts with an attorney's handwritten notes contained legal advice and were privileged).

8

work product and not attorney-client information"). Furthermore, Kelley has not shown any evidence of spoliation or other improper conduct by District 180 in its retention or handling of the final version of the Letter. *See Abu-Hashish v. Scottsdale Ins. Co.*, No. 98 CV 0075, 1999 WL 116226, at *1 (N.D. Ill. Feb. 26, 1999) (rejecting plaintiff's argument that "the attorney-client privilege is inapplicable in a 'bad faith' action" because "plaintiff . . . cited neither facts nor federal or Illinois cases to establish" such an exception to the privilege). The court therefore cannot ignore the protection that Illinois's attorney-client privilege affords to Document No. 2.

Although District 180 also asserted work-product protection for Document No. 2 on its privilege log, (R. 113-1, Def.'s Resp., Priv. Log), District 180 did not advance any argument in its response brief to support that assertion. (See R. 113, Def.'s Resp.) Under federal law, "the burden is on the party seeking to withhold material from discovery to demonstrate by competent evidence and with particularity that . . . work-product applies to each document that is claimed to be privileged." *See Slaven*, 2015 WL 1247431, at *4. District 180 makes no effort to satisfy this burden. Nevertheless, given that District 180 asserted the work-product protection on its privilege log, the court considered whether Document No. 2 qualifies as work product and finds that it does not.

Document No. 2 does not qualify for work-product protection because there is no evidence that the Letter was prepared in anticipation of litigation. *See Slaven*, 2015 WL 1247431, at *3. The Seventh Circuit has defined "anticipation of

litigation" as whether a document was "prepared or obtained *because* of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (emphasis in original). District 180 has not offered any evidence showing that the Letter was prepared because of the prospect of litigation. *See id.* Furthermore, the withheld documents do not show that as of May 1996 there were "articulable claim[s]" against Lempesis or District 180 that were "likely to lead to litigation." *See Slaven*, 2015 WL 1247431, at *3. Accordingly, the work-product doctrine does not apply to Document No. 2.

As for Document No. 3, the attorney-client privilege does not shield it from disclosure. District 180 bears the burden of showing how Document No. 3 qualifies for protection under the attorney-client privilege. *See Mlynarski v. Rush Presbyterian-St. Luke's Med. Ctr.*, 572 N.E.2d 1025, 1028 (Ill. App. 1991). District 180 has not satisfied this burden because Document No. 3 does not reflect any confidential communications. There is no way to distinguish by examining Document No. 3 Tamblyn's original draft for which he sought legal advice from the modified draft incorporating Gerner's comments. Furthermore, Document No. 3 appears to be in final form, except that it is not signed or dated. District 180 has not offered any evidence demonstrating that Tamblyn—or anyone else—requested further legal advice regarding this document. Nor has it offered evidence that anyone made further changes to Document No. 3 based on Gerner's advice or that this version remained confidential and undisclosed to others. To the contrary, Tamblyn testified that, as a matter of course, after receiving Gerner's legal

comments regarding a draft letter, Tamblyn "would create a final document and send it off." (R. 113-2, Def.'s Resp., Tamblyn Dep. 4:5-23, May 27, 2015.) Consistent with the Illinois Supreme Court's edict that "the privilege ought to be strictly confined within its narrowest possible limits," *Waste Mgmt.*, 579 N.E.2d at 327, this court will not stretch to apply the privilege where the evidence does not support such a finding. As such, the attorney-client privilege cannot shield Document No. 3 from disclosure.

Nor does Document No. 3 qualify for work-product protection. District 180 asserted work product on its privilege log with respect to Document No. 3, but it failed to satisfy its burden of substantiating that assertion in its response. (See R. 113, Def.'s Resp.) This is not a situation where the disclosure of Document No. 3 would result in the disclosure of Gerner's "mental impressions, conclusions, opinions, or legal theories" regarding litigation, and District 180 has not argued otherwise. *See* Fed. R. Civ. P. 26(b)(3)(B). And even if Document No. 3 were protected by the work-product doctrine, it is still subject to disclosure in this case. Federal Rule of Civil Procedure 26(b)(3)(A) permits disclosure of work product upon a showing that the materials are "otherwise discoverable" and the party seeking disclosure has "substantial need" for the information and cannot, without "undue hardship," obtain such information through other means. Here, the requested information is relevant to Kelley's claims. (R. 125, Pl.'s Reply at 8; R. 107, Pl.'s Mot. at 3.) Indeed, Document No. 3 may shed some light on when District 180 first became aware of allegations that Lempesis behaved inappropriately with students.

11

Although the court is not opining on the admissibility of Document No. 3 as evidence, the court finds that it is "otherwise discoverable" for purposes of Rule 26(b)(3)(A). Furthermore, Kelley has shown that he exhausted all means of securing the subject letter from other sources, and District 180 has not refuted this point. (See R. 125, Pl.'s Reply at 8-9; R. 113, Def.'s Resp. at 6.) Accordingly, Kelley satisfies the "substantial need" and "undue hardship" exception to the work-product doctrine. Fed. R. Civ. P. 26(b)(3)(A).

Document No. 4 is privileged only in part. Document No. 4-A, the facsimile cover sheet, is protected by the attorney-client privilege, but Document No. 4-B, the Letter attached to the cover sheet, is not privileged. Although Document No. 4-B is attached to an attorney-client communication, an attachment does not become privileged merely by virtue of being attached to a privileged communication. *See Claxton v. Thackston*, 559 N.E.2d 82, 84-85 (Ill. App. 1990) (finding that the party claiming the privilege must prove for each withheld document "that the statement was made for a privileged purpose and show the circumstances under which the statement was made"); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 221 (N.D. Ill. 2013) (finding, with respect to the federal privilege, that even where a communication with a lawyer is privileged, an attachment thereto must be judged separately). Here, the privilege does not extend to Document No. 4-B, which is the same as Document No. 3. District 180 did not claim work-product protection for Document No. 4. (See R. 113-1, Def.'s Resp., Priv. Log.)

### B. Document Nos. 1 and 4-A

Document Nos. 1 and 4-A are facsimile cover sheets to and from Tamblyn and Gerner, which qualify as privileged attorney-client communications. The cover sheets consist of the typical form of privileged documents—confidential communications from a client to an attorney for the purpose of receiving legal advice. *See Ctr. Partners*, 2012 IL 113107, ¶ 30. Indeed, both documents include a request by Tamblyn for legal advice, (Doc. 1), or a reference to Tamblyn's request for legal advice, (Doc. 4-A), from Gerner in his capacity as an attorney with the communication relating to that purpose under the express condition of confidentiality and there is no evidence of waiver. *See Adam*, 280 N.E.2d at 207. Document Nos. 1 and 4-A are therefore privileged and protected from disclosure.

### C. Document No. 5

Document No. 5 consists of a facsimile transmission report. This document is merely a report generated by a facsimile machine showing that "[t]his transmission is completed." This document does not satisfy any part of the legal standard for establishing the attorney-client privilege. *See Adam*, 280 N.E.2d at 207. Even the first prong of the test—a request for legal advice—is not satisfied. *See id.*; *see also McCook Metals, L.L.C.*, 192 F.R.D. at 254 (in applying the federal privilege, finding that facsimile cover sheets "while from or to attorneys, contain no legal advice, and simply identify the parties to the correspondence, address, and phone and fax numbers"). Although the transmission report shows other factual information, such as the time and date, the information shown is at a basic level comparable to what

must be provided in a privilege log. *See* Ill. Sup. Ct. R. 201(n) (stating that a claim of privilege "shall be made expressly and shall be supported by a description of the nature of the . . . things not produced or disclosed and the exact privilege which is being claimed"). District 180 therefore cannot shield Document No. 5 from disclosure.

## Conclusion

For the foregoing reasons, Kelley's renewed motion to compel is granted in part and denied in part.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**