# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ADAM KELLEY, | ) | |
| | ) | No. 13 CV 4922 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| SPIRO LEMPESIS, individually and as an agent of COMMUNITY CONSOLIDATED SCHOOL DISTRICT 180, BURR RIDGE MIDDLE SCHOOL, | ) ) ) ) ) ) | |
| | ) | August 17, 2015 |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

Plaintiff Adam Kelley filed this lawsuit alleging that Defendant Spiro Lempesis, a former teacher and coach, sexually assaulted Kelley when he was a minor, and that Defendant Community Consolidated School District 180, Burr Ridge Middle School ("District 180") acted unlawfully by failing to prevent Lempesis's alleged misconduct. As part of his written discovery, Lempesis issued a subpoena to non-party Al Jazeera America, LLC ("AJAM"), seeking all footage relating to a news story that aired on AJAM discussing sexual abuse allegations against Lempesis. AJAM moved to quash the subpoena, arguing that unaired footage—also known as "video outtakes"—is protected from disclosure by the Illinois Reporter's Privilege Act ("IRPA"), 735 ILCS 5/8-901, *et seq*. For the following reasons, AJAM's motion to quash is granted:

## Background

On April 7, 2015, AJAM aired a 12-minute news story entitled *Sex Crimes in Sports, Broken Trust* on its "America Tonight" program, https://ajam.boxcn.net/s/tiuhewa7pps8q9yhui6135d1w1g5mysp, which discussed Lempesis's alleged sexual abuse of student athletes. (R. 118, AJAM's Mem. at 1.) The report focused primarily on Anthony Collaro, who also has sued Lempesis for alleged sexual abuse in Illinois state court. (Id.); *Collaro v. Lempesis*, No. 2014 L 013428. The story briefly discussed the present litigation. (R. 118, AJAM's Mem. at 2.) Reporter Lori Jane Gliha interviewed Collaro, his attorney, Lempesis, a child abuse expert, and Kelley's attorney Karen Enright. (Id. at 1-2.) Kelley declined to be interviewed for the story. (Id. at 2.)

Shortly after the program aired, on April 30, 2015, Lempesis issued a subpoena to AJAM seeking "[a]ny and all news footage relating to Spiro Lempesis, Karen Enright, and Anthony Collaro of Chicago, Illinois." (R. 118-1, Subpoena to AJAM at 3.) In response, AJAM offered to provide all footage from the *Sex Crimes in Sports* story that aired. (R. 118, AJAM's Mem. at 2.) Lempesis rejected AJAM's offer and insisted that AJAM also produce all video outtakes relating to the identified individuals. AJAM then moved to quash Lempesis's subpoena.

## Analysis

AJAM argues that Lempesis is not entitled to discover the requested video outtakes because they are protected by the IRPA. Pursuant to Federal Rule of Evidence 501, "state law governs privilege regarding a claim or defense for which

state law supplies the rule of decision." Because federal jurisdiction in this action is based upon diversity of citizenship, and Illinois law supplies the rules of decision, Illinois law governs whether the reporter's privilege attaches to the requested video outtakes. *See* Fed. R. Evid. 501; *Desai v. Hersh*, 954 F.2d 1408, 1411 (7th Cir. 1992) ("[T]here is no doubt that the [IRPA] determines the issue of whether [author] Hersh should be afforded protection from disclosing the identities of his sources.").[1] Although AJAM is based in New York, AJAM posits "[f]or purposes of this action" that Illinois law applies to the reporter's privilege question at issue here. (R. 118, AJAM's Mem. at 1, 3 n.2.)

Under the IRPA, a court cannot "compel any person to disclose the source of any information obtained by a reporter," except upon a showing that "all other available sources of information have been exhausted" and that "disclosure of the information sought is essential to the protection of the public interest involved." 735 ILCS 5/8-901 & 8-907(2). The IRPA defines "source" as "the person or means from or through which the news or information was obtained." *Id*. § 5/8-902(c). The Illinois Appellate Court in turn has defined "means" as "'something useful or helpful

---

[1] In *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003), the Seventh Circuit found that there was no basis under federal or Illinois law for recognizing a reporter's privilege in federal cases involving federal questions. Here, Illinois law applies to Kelley's state law claims. (See R. 23, Am. Compl.; R. 50, May 1, 2014 Ord., Gettleman, J.); *see also Webb v. CBS Broad., Inc.*, 08 CV 6241, 2011 WL 111615, at *9 (N.D. Ill. Jan. 13, 2011) ("This case was removed to federal court on the basis of diversity jurisdiction. [Plaintiffs'] claims here arise under state common law. . . . The privileges provided by Illinois law are to be applied to [plaintiffs'] Illinois state law claims.") (Internal citations omitted).

3

to a desired end.'" *People v. Slover*, 753 N.E.2d 554, 557 (Ill. App. Ct. 2001) (quoting Merriam Webster's Collegiate Dictionary 720 (10th ed. 1998)).

The purpose of the IRPA "is to assure reporters access to information, thereby encouraging a free press and a well-informed citizenry." *People v. Pawlaczyk*, 724 N.E.2d 901, 908 (Ill. 2000). Indeed, the IRPA protects the autonomy of the press by allowing the media to "freely gather and disseminate information" without fear of compelled disclosure of a reporter's sources, except under certain circumstances. *Cukier v. Am. Med. Ass'n*, 630 N.E.2d 1198, 1200 (Ill. App. Ct. 1994) (citing *In re Special Grand Jury Investigation of Alleged Violation of the Juv. Ct. Act*, 472 N.E.2d 450, 452 (Ill. 1984)). The IRPA thus "reflects 'a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters.'" *People ex rel. Scott v. Silverstein*, 412 N.E.2d 692, 695 (Ill. App. Ct. 1980), *rev'd on other grounds*, 429 N.E.2d 483 (Ill. 1981).

To further the public interest in a free press, the IRPA protects not only *identities* of sources but also the "*means* from or through which the news or information was obtained." 735 ILCS 5/8-902(c) (emphasis added). The Illinois Supreme Court has not yet decided whether—and to what extent—a reporter's newsgathering materials qualify as a "source" under the IRPA. The Illinois Appellate Court has interpreted the "means" clause "to protect more than simply the names and identities of witnesses, informants, and other persons providing news to a reporter." *Slover*, 753 N.E.2d at 557. In so finding, the appellate court

4

found convincing the fact that "the legislature did not limit the scope of section 8-901 of the [IRPA] by inserting either 'the name of' or 'the identity of' before 'the source of any information.'" *Id.* at 558. Moreover, in a separate action, the Illinois Appellate Court quoted favorably language finding that "a reporter's resource materials" are equally as deserving of protection as the identities of "confidential informants." *Silverstein*, 412 N.E.2d at 695 ("'The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants.'") (quoting *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co., Inc.*, 455 F. Supp. 1197, 1204 (N.D. Ill. 1978)[2]).

Where, as here, the Illinois Supreme Court has not ruled definitively on whether the IRPA protects from disclosure video outtakes, this court must try to determine how the Illinois Supreme Court would decide the issue. *See Wilkins v. Just Energy Grp., Inc.*, No. 13 CV 5806, 2015 WL 1234738, at *6 (N.D. Ill. Mar. 13, 2015) (citing *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 936 (7th Cir. 2012)). "In making that prediction, the decisions of the Illinois Appellate Court are non-binding but persuasive 'unless [the court has] a compelling reason to doubt that [the Illinois Appellate Court has] stated the law correctly.'" *Wilkins*, 2015 WL 1234738, at *6 (quoting *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001)). Here, there is no compelling reason to doubt that the Illinois Appellate Court has stated the law correctly. Indeed, even Lempesis does not

---

[2] *Gulliver's Periodicals*, 455 F. Supp. at 1200, involved only federal questions governed by federal law. As explained *supra* in note 1, the Seventh Circuit in *McKevitt*, 339 F.3d at 533, later refused to recognize a reporter's privilege in federal cases involving federal questions.

5

challenge the applicability of the IRPA to the requested video outtakes. (See R. 129, Def.'s Resp.) He therefore waives any argument that unaired footage is not a protected "source" under the IRPA. In any event, without any argument or authority contradicting the Illinois Appellate Court's interpretation of the IRPA as protecting a reporter's source materials, this court will not set aside that interpretation. *See Silverstein*, 412 N.E.2d at 695; *Slover*, 753 N.E.2d at 557-58 (holding that news photograph is "source" under IRPA).

Furthermore, while not binding upon other Illinois courts or this court, *see Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 n.1 (7th Cir. 1977), Illinois trial courts have repeatedly applied the protections of the IRPA to video outtakes and other source materials. *See, e.g., People v. Goldman*, No. 02 CF 1217, 34 Med. L. Rptr. 2310, 2312 (Ill. Cir. Ct. Sept. 1, 2005) (quashing subpoena in criminal case for video outtakes of interview with defendant because materials were privileged under IRPA); *Smith v. Advocate Health Care Network*, No. 01 L 11814, 33 Med. L. Rptr. 1752, 1754 (Ill. Cir. Ct. Sept. 10, 2004) (finding that video outtakes were no different than unpublished photographs and therefore qualified for protection under IRPA); *Dunn v. Hunt*, No. 02 L 10310, 2003 WL 22330330, at *3 (Ill. Cir. Ct. July 25, 2003) (declining to compel production of unaired film footage because IRPA "protects compelled disclosure of resource materials and information gathered by a journalist"); *McCabe v. Greager*, No. 97 L 1275, 27 Med. L. Rptr. 1702, 1703 (Ill. Cir. Ct. Feb. 24, 1999) (quashing subpoena for video outtakes on ground that requested

6

information qualified as "source" under IRPA). Accordingly, the court holds that the requested video outtakes qualify for protection under the IRPA.

Despite the protections afforded under the IRPA, the privilege may be divested if the party seeking information identifies the specific information sought, its "relevancy to the proceedings," and a specific public interest that would be frustrated without disclosure. 735 ILCS 5/8-904; *see also Pawlaczyk*, 724 N.E.2d at 908. The requesting party must also establish that there are no other available sources from which to obtain the information and that disclosure is "essential" to protecting the public interest. 735 ILCS 5/8-905 to 8-907; *see also Pawlaczyk*, 724 N.E.2d at 908. The IRPA provides:

> In granting or denying divestiture of the privilege . . . the court shall have due regard to the nature of the proceedings, the merits of the claim or defense, the adequacy of the remedy otherwise available, if any, the relevancy of the source, and the possibility of establishing by other means that which it is alleged the source requested will tend to prove.

735 ILCS 5/8-906; *see also Pawlaczyk*, 724 N.E.2d at 908. Divestiture under the IRPA is intended to be a "last resort" to obtain information from a reporter. *In re Arya*, 589 N.E.2d 832, 841 (Ill. App. Ct. 1992).

AJAM maintains that Lempesis has failed to satisfy his burden of showing relevancy, exhaustion of other available sources, and frustration of an "essential" public interest absent disclosure. (R. 118, AJAM's Mem. at 6-9.) As to AJAM's first argument, the court finds that the requested video outtakes are relevant. The Illinois Supreme Court in *Pawlaczyk*, 724 N.E.2d at 912, found that the plain language of the IRPA requires that the privileged information be "'relevan[t]' to the

7

proceedings in which they are sought." *See id.* (quoting 735 ILCS 5/8-904). "[A] fact is 'relevant' if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Pawlaczyk*, 724 N.E.2d at 911 (citations omitted). Assuming that AJAM's video outtakes depict the same subjects discussed in the news story that was aired, the outtakes undoubtedly convey information that makes other facts more or less probable. The news story examined allegations that Lempesis acted in a predatory and/or inappropriate manner toward Collaro, Kelley, and another student who was not named in the story. The AJAM reporter interviewed Attorney Enright, who provided details regarding Kelley's claims that Lempesis sexually abused and battered him when he was a minor. (See, e.g., R. 23, Am. Compl. ¶¶ 55-56 (Count I).) In the footage that aired, Attorney Enright asserted that Lempesis took Kelley to a mobile home and raped him on numerous occasions, stayed overnight at Kelley's house, committed sexual acts of violence at Kelley's house, and videotaped these attacks. Contrary to AJAM's assertions otherwise, (R. 118, AJAM's Mem. at 7), these detailed allegations do not appear in Kelley's amended complaint, (see R. 23, Am. Compl.). Because the privileged video outtakes likely convey similar information, which may tend to make any one of the elements of sexual abuse and battery more or less probable, they are relevant to these proceedings. *See Pawlaczyk*, 724 N.E.2d at 911-12.

AJAM contends that because Attorney Enright is unlikely to be deemed a "competent witness on any relevant matter" at trial, her statements should be

deemed irrelevant for purposes of the IRPA. (R. 130, AJAM's Reply at 2; see also R. 118, AJAM's Mem. at 7.) The court expressed similar concerns about the admissibility of her statements during the motion hearing when the matter was presented. But AJAM does not cite any authority requiring privileged information to be admissible at trial to qualify as "relevant" for purposes of the IRPA. (Id.) Under the IRPA, "[i]t is sufficient if the privileged material is relevant to a 'fact of consequence.'" *Pawlaczyk*, 724 N.E.2d at 912. "[C]ritical[] relevancy" or even a showing that a party can prove an element of a claim at trial is not necessary for privileged information to be deemed "relevant."[3] *Id.*

Additionally, the AJAM news story—and likely also the privileged video outtakes—included a discussion of other alleged evidence that may help support or refute Kelley's claims. For example, the story provided information about Lempesis's interactions with students outside of school, such as times when Lempesis attended concerts with students and spent the night at their homes while their parents traveled. In the story, Lempesis mentioned one occasion in which he was wrestling with a boy who was alone at his home when his mother walked in and expressed displeasure. Lempesis said that the mother notified the boy's school, and Lempesis had subsequent discussions with the superintendent and principal. Such allegations may be "relevant to a 'fact of consequence,'" *Pawlaczyk*, 724 N.E.2d

---

[3] Insofar as AJAM relies upon *Dowd v. Calabrese*, 577 F. Supp. 238 (D.D.C. 1983), to support its argument that relevancy is lacking here, the relevancy standard in *Dowd* is different from the one set forth in *Pawlaczyk*, 724 N.E.2d at 911-12. (See R. 118, AJAM's Mem. at 7; R. 130, AJAM's Reply at 2.) The *Dowd* court required a "high degree of relevance," 577 F. Supp. at 241, rather than the lower threshold required under the IRPA.

9

at 912, relating to Kelley's allegations that District 180 "willful[ly] and wanton[ly] disregard[ed] . . . the predatory or pedophilic tendencies of [Lempesis] while he was a teacher and coach." (R. 23, Am. Compl. ¶ 60(i) (Count IX).) Although much of the discussion on this subject came from Lempesis, the privileged video outtakes may provide additional information from other sources that is directly relevant to Kelley's claims and/or Lempesis's defenses.

The AJAM news story also mentioned allegations that Lempesis sexually abused Collaro, beginning when Collaro was still a minor. Although there is no suggestion that Collaro attended District 180, Kelley may seek to examine Collaro at trial to show "predatory or pedophilic tendencies of [Lempesis] while he was a teacher and coach." (Id. ¶ 60(i) (Count IX).) Indeed, Lempesis states that he "was questioned during his deposition at length regarding his relationship and interactions with [Collaro]." (R. 129, Def.'s Resp. at 1.) Again here, to the extent that the privileged outtakes convey information akin to what AJAM aired regarding Lempesis's alleged predatory behavior toward boys, such information is relevant to the parties' claims and/or defenses. Accordingly, Lempesis has satisfied the IRPA's threshold relevance standard for divesting the reporter's privilege.

However, Lempesis fails to satisfy the remaining requirements under the IRPA. For starters, Lempesis has not shown that there are no other available sources from which to obtain the information. *See* 735 ILCS 5/8-906 to 8-907; *see also Pawlaczyk*, 724 N.E.2d at 908. To satisfy the exhaustion of sources requirement, "a petitioner must satisfy the court that its investigation has been

sufficiently thorough and comprehensive that further efforts to obtain the sought-after information would not likely be successful." *In re Arya*, 589 N.E.2d at 840. Here, Lempesis has not made such a showing. Indeed, he has not presented any evidence of actions he undertook to obtain the requested information from other sources before issuing the AJAM subpoena. (See R. 129, Def.'s Resp. at 2-3.)

Lempesis tries to excuse his failure to seek the requested information from Attorney Enright by asserting that such efforts likely would not have been fruitful. (See id. at 2.) Lempesis asserts that it is unlikely that he would have been permitted to depose Attorney Enright because she is Kelley's counsel in this case.[4] Regardless, Lempesis could have deposed Kelley regarding the allegations made in the AJAM interview. To the extent that Lempesis's counsel already had taken Kelley's deposition before discovering the AJAM news story, Lempesis could have sought leave to reopen Kelley's deposition for the sole purpose of questioning him about the allegations Attorney Enright discussed in the AJAM story if these allegations are new or different.

Similarly, Lempesis tries to justify his failure to issue a subpoena to Collaro before the close of fact discovery. (See id. at 3.) Lempesis admits that he could have deposed Collaro but did not because he had hoped to receive AJAM's video outtakes

---

[4] On June 19, 2015, the same day that AJAM moved to quash Lempesis's subpoena, (R. 117), the court ruled that Kelley could not depose District 180's outside counsel Philip Gerner, (R. 120), because Kelley did not satisfy the four-prong test for deposing a party's legal counsel. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, Nos. 09 CV 7666 & 11 CV 1468, 2013 WL 5274296, at *2 (N.D. Ill. Sept. 18, 2013).

11

recording Collaro's statements. (Id. at 2-3.) Lempesis states that AJAM filed its motion to quash only four days before the June 23, 2015 discovery deadline in this case, effectively precluding Lempesis from being able to issue a subpoena to Collaro and depose him. (Id. at 2.) But Lempesis issued the subpoena to AJAM on April 30, 2015, nearly two months before the close of fact discovery. (R. 118-1.) Lempesis could have issued a subpoena to Collaro at least as a precautionary measure before the discovery deadline, particularly because Lempesis was questioned "at length" about Collaro during his deposition. Or Lempesis could have sought leave from the court to issue a subpoena to Collaro after receiving AJAM's motion to quash. (Id. at 1.) But Lempesis did not. He apparently preferred to use AJAM's investigation in lieu of conducting his own, in contravention of the IRPA's requirement that he first exhaust "all other available sources of information." *See* 735 ILCS 5/8-907(2); *see also In re Arya*, 589 N.E.2d at 840-41 ("[T]he legislature did not intend to compel reporters to become investigators for the State or anyone else."). Thus, Lempesis has not proven an exhaustion of sources. *See In re Special Grand Jury Investigation*, 472 N.E.2d at 454 (reversing divestiture of reporter's privilege because grand jury had not exhausted other available sources of information).

Finally, Lempesis has not shown that disclosure is "essential" to protecting a public interest. *See* 735 ILCS 5/8-904, 8-907; *see also Pawlaczyk*, 724 N.E.2d at 908. Lempesis identifies the specific "public interest" as his ability to "fight[] to protect his character and gather all information and potential evidence to support his defense." (R. 129, Def.'s Resp. at 3.) Yet Lempesis does not explain why the video

outtakes are "essential" to such interest. This is not a case in which the information Lempesis seeks from AJAM is unavailable elsewhere. Lempesis is a defendant in cases filed by Kelley and Collaro. Lempesis could have asked both individuals the very same questions that the AJAM reporter asked Kelley's attorney and Collaro. He chose not to do so, and now seeks instead to capitalize on AJAM's investigative efforts, despite the Illinois legislature's clear effort to avoid such a result through the enactment of the IRPA. *See* 735 ILCS 5/8-901 to 8-909. Accordingly, Lempesis has not demonstrated that divestiture of the privileged information he seeks from AJAM is "essential" to protecting a public interest.

## Conclusion

For the foregoing reasons, AJAM's motion to quash Lempesis's subpoena is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**